Dear Ms. Edwards:
Your request for an Attorney General's Opinion has been referred to me for review, research and reply.
The facts you submit are truly compelling: Hurricanes Katrina and Rita have caused havoc in the Louisiana real estate industry, have converted buyers, sellers and agents, in many instances, into victims and have helped to deplete the inventory of available properties for sale. These natural disasters have also shattered the dreams of many would-be homeowners who entered into purchase agreements before the hurricanes, but who, for whatever reason, were unable to perform under the agreements because of the ravages left by the hurricanes.
Problems resulting from the hurricanes have crystallized into several different factual scenarios:
The first involves cases where buyers could not close on their homes due to Katrina or Rita. In such a situation, the buyer entered into a purchase agreement that provided he must close on or before a certain date. However, by closing Clerk of Court's offices, displacing people necessary to finalizing the transaction such as attorneys and notaries, and by demolishing homes and offices, the hurricanes prevented the buyer from performing by the deadline set forth in the purchase agreement.
Those who would seek to profit due to the spike in real estate prices caused by the hurricanes compose still another group. This group involves some sellers who insist that the contract expired unless the buyer performed on or before the date specified in the purchase agreement regardless of whether a fortuitous event made his performance impossible. Under this scenario, after the expiration of the deadline, such a seller declares the contract expired, pockets the escrow or earnest money and seeks to re-sell the property for a significantly higher price.
Other fair-minded sellers who wish to act in good faith cannot locate their buyers. They believe that the buyer's performance is suspended for as long as the fortuitous event prevents it. However, the question of when must the buyer perform still plagues them and remains a matter of debate. This dilemma has caused some sellers to take the position that Governor Blanco's Executive Order No. KBB 2005-32 (which has recently been extended by Executive Order No. KBB 2005-48 to October 25, 2005) serves to temporarily suspend the tolling of all closing deadlines contained in purchase agreements for immovable property.
Real estate transactions are not monolithic. They may be commercial or residential, they may or may not involve escrow or earnest money or they may be simple or complex, to name just a few differences. Because the parties can agree to assert or delete various provisions such as an "Act of God" clause, there really is no such thing as a "standard" real estate contract. Since the facts surrounding each deal vary so greatly, each case must be decided on its own facts. However, without resorting to an examination of the effect of the Governor's emergency orders, Louisiana law does provide some guidance, in a general sense, when fortuitous events make an obligor's performance impossible.
1. Generally speaking, the law favors the buyer when fortuitous events make performance impossible. La. Civ. Code Article 1873
provides, in pertinent part, that "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." Thus, if the purchase agreement called for the sale to be passed on a certain date, but a hurricane decimated the supply of available notaries or attorneys to pass the act of sale, under such circumstances the obligor's time for performing would be suspended.
The notion that fortuitous events suspend the buyer's obligation to perform is supported by Saul Litvinoff, a prominent legal commentator:
 A question arises when a fortuitous event prevents the timely performance of an obligation without making that performance impossible in an absolute sense. That is the case of a fortuitous event of limited duration that temporarily prevents the use of but does not destroy the means on which the obligor was counting in order to perform his obligation. . . .
 When such is the case, . . . performance may merely be suspended for as long as the fortuitous event prevents it. . . .
 To decide whether a fortuitous event that makes performance impossible for a while gives rise to dissolution or merely suspends the running of the term to render that performance, account must be taken of the nature of the contract, relevant usages, the duration of the obstacle, the intention of the parties to the extent that it has been expressed, and also of the overriding obligation of good faith.
Saul Litivinoff, 5 La. Civ. L. Treatise, Law of Obligations § 16.62 (2d ed.)
Thus, it is the opinion of this office that a buyer is not liable for his failure to perform when a fortuitous event makes performance impossible.
2. Assuming that a fortuitous event makes performance impossible for a period of time, what lifts the suspensive period so that the buyer must now perform?
No specific statute or codal article directly addresses this question. However, La. Civ. Code Article 2024 states that a contract of unspecified duration may be terminated at the will of either party "by giving notice, reasonable in time and form, to the other party." Even though a fortuitous event that renders performance impossible cannot transform the nature or term of a contract, the provisions of La. Civ. Code Article 2024 would seem to be analogous to contracts of limited duration. Thus, under Louisiana law, if a fortuitous event prevents a buyer from performing, performance would be suspended until such time as the seller gave reasonable, written notice to the buyer that he intended to terminate the purchase agreement on a certain date.
If the seller in the utmost good faith attempted to notify the buyer of his intention to terminate the contract but could not locate him, the contract would likely be deemed to have been terminated on the date provided in the notice. However, under such circumstances, the overriding concern would be the seller's good faith.
It is the opinion of this office that reasonable written notice of the termination of the purchase agreement would trigger the abatement of the suspensive period following natural disasters such as Hurricanes Katrina and Rita.
As stated above, each case must be decided on its own unique set of facts. No opinion can possibly contemplate all the various factual settings. Thus, although this opinion can be used as a general reference guide, private attorneys should be consulted when specific facts of each situation become known.
We hope that this sufficiently answers your inquiries, but if we can be of further assistance, please do not hesitate to contact us.
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ___________________________ Christopher D. Matchett Assistant Attorney General